UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAIN C. HOF, | Case No. 1:16-cv-01169-LJO-JDP |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS THAT COURT GRANT DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT |
| v. | |
| AARONJIT KALEKA, | OBJECTIONS DUE IN 14 DAYS |
| Defendant. | ECF No. 25 |

Plaintiff Shain C. Hof, a state prisoner, proceeds without counsel in this civil rights action brought under 42 U.S.C. § 1983. Plaintiff sustained a lower leg injury on October 30, 2015, while walking down a stairway at Avenal State Prison ("ASP") in Avenal, California. ECF No. 1 at 3. Plaintiff alleges that defendant Aaronjit Kaleka, a medical doctor and attending triage physician at ASP, was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. *Id*. at 2. Plaintiff has also named Scott Kernan and E. Conanan as defendants, but these two defendants were dismissed at the screening stage.[1] *See* ECF No. 10.

Kaleka moves for summary judgment, arguing that he was not deliberately indifferent to plaintiff's serious medical needs and that plaintiff was not harmed by his treatment decisions. *See* ECF No. 25-1. We recommend that the court grant Kaleka's motion for summary judgment because there is no genuine dispute as to any material fact, and Kaleka is entitled to judgment as a matter of law.

---

[1] The clerk of the court is directed to remove Kernan and Conanan from the docket sheet.

I.  **Facts**                                                                                    `

The relevant factual background of this case is not disputed.[2]  Plaintiff injured his lower

leg on October 30, 2015, at ASP.  Plaintiff requested medical care for his injured lower leg

from Kaleka on three instances between Saturday, October 31, 2015, and Monday, November

2, 2015.  The central question here is whether Kaleka's responses to plaintiff's medical needs

show deliberate indifference.

      a.  **Plaintiff sustains a lower leg injury on Friday, October 30**

At 8:30 p.m. on October 30, plaintiff slipped and missed a step while walking down a

stairway in building 650 of ASP.  DSUF1-2;[3] ECF No. 1 at 3.  Although plaintiff immediately

felt severe pain and his ankle began to swell, he did not immediately seek medical attention

because he believed that he had only twisted his ankle.  DSUF4; ECF No. 1 at 3.  The

following morning, plaintiff hobbled on the injured leg to the "chow,"[4] ate breakfast, and

returned to his dorm.  DSUF5.

      b.  **Plaintiff first seeks medical attention on Saturday, October 31**

Plaintiff waited until the late morning of the next day, Saturday, October 31, to seek

medical attention for his injured lower leg.  DSUF6; ECF No. 1 at 3.  Plaintiff was first seen by

an unidentified "F yard" nurse, who requested that he be transported to the ASP Triage

Treatment Center.  ECF No. 1 at 3.

At triage, plaintiff was first seen at intake by Nurse Bitmead.  DSUF8; ECF No 1 at 3.

Nurse Bitmead noted that plaintiff complained that his right ankle hurt and was swollen and

---

[2] Defendant Kaleka submitted a "separate statement of undisputed facts in support of motion for summary judgment."  ECF No. 25-2.  Plaintiff filed a response to the motion for summary judgment, which contained three legal arguments.  ECF No. 30.  Plaintiff did not object to the facts, as presented by Kaleka in his statement.  We have examined the entire record, including plaintiff's verified complaint, ECF No. 1, in reaching the conclusion that the relevant facts are undisputed.

[3] DSUF refers to defendant Kaleka's "separate statement of undisputed facts in support of motion for summary judgment."  ECF No. 25-2.

[4] The "chow" refers to the prison cafeteria.

could not bear weight.  DSUF8.  Nurse Bitmead further noted that plaintiff's right ankle and foot were swollen with some purple discoloration on the inner side of the ankle.  DSUF8.  She described plaintiff as calm and cooperative, showing no signs of distress, with clear speech, even and unlabored respirations, and no open wounds, bleeding or drainage.  DSUF8.

Following intake, plaintiff was examined by defendant Kaleka, a medical doctor.  DSUF9; ECF No. 1 at 3-4.  Plaintiff told Kaleka how the injury occurred and described his symptoms.  DSUF11; ECF No. 1 at 4.  Plaintiff requested immediate transport to an outside medical facility for treatment.  ECF No. 1 at 4.  Kaleka noted that plaintiff's right ankle had swelling, tenderness, and a limited range of motion.  DSUF11.  He concluded that plaintiff had sprained, rather than fractured, his ankle, and that immediate transport to an outside medical facility was unnecessary.  DSUF11-12.

Kaleka issued several orders to treat plaintiff's lower leg injury.  DSUF14; ECF No. 1 at 3-4.  He prescribed plaintiff a pain reliever: Tylenol #3 with codeine.  DSUF14; ECF No 1 at 3.  Additionally, plaintiff: (1) received and was instructed on how to use crutches, (2) was issued a chrono for a temporary low bunk; (3) had his ankle wrapped with a supportive bandage; and (4) was instructed to keep his right foot elevated.  DSUF14; ECF No. 1 at 3-4.  Finally, x-rays were scheduled for Monday morning, when the prison radiology department re-opened, and a follow-up appointment was scheduled for Tuesday.  DSUF14; ECF No. 1 at 4.  Plaintiff was released at 3:30 p.m.  DSUF14.

**c.  Plaintiff seeks medical attention for a second time on October 31**

After the appointment, plaintiff returned to his housing assignment and later walked to the pill and chow line.  ECF No. 1 at 4.  Later that evening, plaintiff noticed that his foot and ankle were turning purple in color, that pain and swelling had increased, and that blisters had developed on his ankle and had begun to burst.  DSUF15-17; ECF No. 1 at 4.  Plaintiff again sought medical treatment and returned to the ASP Triage Treatment Center at midnight on Sunday, November 1.  DSUF18.

Shortly thereafter, Kaleka received a telephone call from the examining nurse reporting that plaintiff had returned to triage and was complaining of increased pain, bruising, and

blisters.  DSUF19; ECF No. 1 at 4.  Kaleka understood the reported symptoms to be consistent `

with an ankle sprain and ordered new pain medication for plaintiff.  DSUF19; ECF No 1 at 4.

Plaintiff's ankle was re-wrapped by the nurse, the follow-up appointment with a physician was

advanced to Monday morning after the x-rays, and Kaleka reiterated his instructions for

plaintiff to use crutches.  DSUF19.  Plaintiff was released to custody in stable condition at 1:00

a.m.  DSUF19.  Plaintiff asked again to be transported to an outside medical facility, but the

request was denied.  ECF No. 1 at 4-5.

Later that day, plaintiff again requested medical treatment at the ASP Triage Treatment

Center, but access was not permitted.  ECF No 1 at 5.

### d.  X-rays taken at ASP on Monday, November 2

X-rays were taken on plaintiff's lower leg on Monday, November 2, at 8:00 a.m.

DSUF20; ECF No. 1 at 5.  The x-rays revealed that plaintiff had suffered a distal tibia and

fibula fracture.  DUSF21; ECF No. 1 at 5.  Upon review of the x-rays, Kaleka immediately

ordered that plaintiff be transported to Mercy Hospital in Bakersfield, California.  DSUF21;

ECF No. 1 at 5.

Plaintiff was treated in the emergency room at Mercy Hospital on November 2.

DSUF22; ECF No. 1 at 5.  The attending emergency room physician noted fluid collection in

the right ankle, possible infection around the right ankle area, and "[a] lot of blistery

erythematous rash."  ECF No. 25-3 at 33-34.  Another attending physician, Peter Ellis, M.D.,

noted that:

> This patient is an inmate at local correctional facility.  He apparently slipped and fell
> down some stairs on Friday, 30th.  He apparently had increased pain and swelling on
> Saturday and the right foot now appears pale, and there is blistering at the medial
> aspect of it.  Interestingly, the patient was not placed on any type of protective splint
> and it is now Monday before the patient presents to the ER for case.  He apparently
> says he told someone about the pain at the prison and about the fracture, but he was
> told the physician had [said] "nothing can be done until Monday."

ECF No. 30 at 17.  Plaintiff received a supportive splint for the right ankle, pain medication,

and antibiotics for a possible skin infection.  DSUF22; ECF No. 1 at 5.  A consultation with an

1 orthopedic specialist was scheduled. ECF No. 25-3 at 34.                                    `

2    **e.  Surgery performed at Mercy Hospital on Wednesday, November 4**

3       On November 4, 2015, plaintiff was examined at Mercy Hospital by Young Paik, a

4 medical doctor and consultative specialist. ECF No. 25-3 at 36-37. Paik noted a "severe

5 blister anterolateral posterior aspect of ankle joint and there is tenderness of the proximal

6 lateral aspect of the knee joint." ECF No. 25-3 at 36. X-rays performed at Mercy Hospital

7 revealed "widening of the distal tibiofibular syndesmosis and medial aspect of the ankle joint"

8 and a "spiral fracture of the proximal shaft of the neck of the fibula." ECF No. 25-3 at 36.

9 Paik recommended repair of the tibiofibular syndesmosis (open surgery), but the procedure

10 could not be performed due to plaintiff's fracture blister. *See* ECF No. 25-3 at 37, 46; ECF No

11 1 at 5-6. Instead, Paik recommended a closed reduction surgery (i.e., no internal plates or

12 screws) of the right ankle. *See* ECF No. 25-3 at 37, 46; ECF No 1 at 6.

13       On the same day, plaintiff underwent a successful closed reduction surgery of the

14 fracture. DSUF25; ECF No. 25-3 at 40. Plaintiff was released from Mercy Hospital on

15 November 5 and returned to ASP. DSUF25.

16  **II.  Analysis**

17       A district court will grant summary judgment when "there is no genuine dispute as to any

18 material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

19 A factual dispute is genuine if a reasonable trier of fact could find in favor of either party at

20 trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The disputed fact is

21 material if it "might affect the outcome of the suit under the governing law." *See Anderson*,

22 477 U.S. at 248; *accord Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

23 (1986). Entitlement to summary judgment depends on the movant's burden at trial: a movant

24 who has the burden of persuasion must present evidence supporting every element of a claim

25 or defense; the movant without that burden can prevail by showing that the opponent cannot

26 prove an element of a claim or defense.[5] The court must view the record in the light most

27 _____

28 [5] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *compare Barnes v. Sea Hawaii Rafting, LLC*, 889 F.3d 517, 537 (9th Cir. 2018) (movant with burden of persuasion at trial),

1  favorable for the nonmoving party.  *See Zetwick v. Cty. of Yolo*, 850 F.3d 436, 441 (9th Cir.  `

2  2017).

3      Familiar standards govern burden-shifting for summary judgment.  *See Celotex Corp. v.*

4  *Catrett*, 477 U.S. 317, 323-27 (1986).  The movant bears the initial burden to show prima facie

5  entitlement to summary judgment.  *See id*.; *Friedman v. Live Nation Merch., Inc*., 833 F.3d

6  1180, 1188 (9th Cir. 2016).  The burden then shifts to the party opposing summary judgment to

7  produce evidence showing a genuine dispute of a material fact.  *See Friedman*, 833 F.3d at

8  1188.  The movant bears the ultimate burden of persuasion.  *Id*.

9      The Eighth Amendment forbids cruel and unusual punishment.  *See* U.S. Const. amend.

10  VIII.  Cruel and unusual punishment can take many forms, and the deprivation of basic needs

11  such as adequate food, clothing, shelter, medical care, or safety can call violate the Eighth

12  Amendment.  *See Farmer v. Brennan*, 511 U.S. 825, 832-37 (1994); *Hudson v. Palmer*, 468

13  U.S. 517, 526-27 (1984).  In the medical context, a defendant violates the Eighth Amendment

14  when "they are deliberately indifferent to a prisoner's serious medical needs."  *Peralta v.*

15  *Dillard*, 744 F.3d 1076, 1081 (9th Cir. 2014) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104, 97

16  S.Ct. 285, 50 L.Ed.2d 251 (1976)).  A prisoner has a serious medical need if "failure to treat it

17  will result in significant injury or the unnecessary and wanton infliction of pain."  *Id*. at 1081-

18  82.

19      Here, the parties do not dispute that plaintiff had a serious medical need.  The only

20  question is whether defendant Kaleka was deliberately indifferent to plaintiff's serious medical

21  need.

22      Deliberate indifference is a subjective standard.  The defendant must know the "facts

23  from which the inference could be drawn that a substantial risk of serious harm exist[ed]" for

24  the plaintiff, and the defendant must actually draw that inference.  *Farmer*, 511 U.S. at 837;

25  *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1068 (9th Cir. 2016).  The requirement of

26

27  *with Friedman v. Live Nation Merch., Inc*., 833 F.3d 1180, 1188 (9th Cir. 2016) (non-moving
   party without burden of persuasion at trial).
28

6

drawing the inference is critical: the defendant's "failure to alleviate a significant risk that he `

should have perceived but did not, while no cause for commendation, cannot under our cases

be condemned as the infliction of punishment." *See Farmer*, 511 U.S. at 838. "Mere

negligence in diagnosing or treating a medical condition, without more, does not violate a

prisoner's Eighth Amendment rights." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004).

Plaintiff argues that defendant Kaleka was deliberately indifferent to his serious medical

needs in three ways:

1. He failed to recognize the need for emergent care by refusing to send plaintiff to
   an outside medical facility immediately;

2. He failed to perform a proper evaluation of plaintiff's symptoms, including the
   risk of compartment syndrome; and

3. He failed to provide plaintiff with proper support for the injured ankle (i.e. a
   splint), resulting in additional injury.

The record is undisputed that plaintiff injured his ankle in evening of Friday, October 30,

and did not seek treatment until the following day. When Kaleka examined plaintiff in the

afternoon of Saturday, October 31, Kaleka administered a non-emergent course of medical

treatment, providing plaintiff with: (1) pain medication; (2) crutches; (3) an ankle wrap; (4) a

lower bunk chrono; (5) a follow-up appointment; and (6) x-rays scheduled for Monday

morning when the prison radiology department re-opened. Based upon the information he

received from plaintiff and his examination, Kaleka concluded that transport to an outside

medical facility for emergency surgery or immediate x-ray was not appropriate. When plaintiff

reappeared at triage later that evening reporting worsening symptoms and blisters, Kaleka

likewise concluded that the symptoms were consistent with a non-emergency ankle sprain and

additional medical treatment was ordered.

Although it now appears that Kaleka was incorrect in his initial assessment, we cannot

conclude—viewing the facts in a light most favorable to plaintiff—that there is triable issue as

to whether he acted with a sufficiently culpable state of mind. Kaleka did not refuse to

administer medical care to plaintiff. It is undisputed that a course of treatment was prescribed

to treat plaintiff's injury.  Even if the prescribed course of treatment was later shown to be   `

incorrect, improper diagnosis and treatment is insufficient to show deliberate indifference

absent additional evidence indicating that Kaleka willfully and purposefully inflicted pain and

suffering upon plaintiff.  *See Toguchi*, 391 F.3d at 1057 ("Mere negligence in diagnosing or

treating a medical condition, without more, does not violate a prisoner's Eighth Amendment

rights.").  No such evidence has been presented by plaintiff here.

Neither does plaintiff's disagreement with the prescribed course of treatment amount to

deliberate indifference to serious medical needs.  "A difference of opinion between a physician

and the prisoner—or between medical professionals—concerning what medical care is

appropriate does not amount to deliberate indifference."  *Colwell v. Bannister*, 763 F.3d 1060,

1068 (9th Cir. 2014) (quoting *Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012)).  Instead,

the plaintiff "'must show that the course of treatment the doctors chose was medically

unacceptable under the circumstances' and that the defendants 'chose this course in conscious

disregard of an excessive risk to plaintiff's health.'"  *Id.* (quoting *Snow*, 681 F.3d at 988).

Distinguishing a difference of opinion from a choice of medically unacceptable treatment can

pose a challenge, but it remains uncontroversial that a medical professional must exercise some

degree of professional judgment; a plaintiff can prevail by showing that a medical professional

exercised no medical judgment at all.  *See id.* at 1069.

There is nothing in the record suggesting that Kaleka exercised no medical judgment at

all.  Plaintiff's best evidence is the November 2 medical notation recorded by Mercy Hospital

emergency room physician Peter Ellis seeming to question—with the benefit of hindsight—

why plaintiff was not sent to the emergency room sooner.  *See* ECF No. 30 at 17.  At best,

however, the record merely questions the medical judgment of Kaleka, and the mere fact of

disagreement between medical professionals does not equate to deliberate indifference.  *See*

*Colwell*, 763 F.3d at 1068.

Plaintiff's remaining arguments fail for essentially the same reasons.  Plaintiff claims that

Kaleka erred in failing to provide splinting for his injured ankle.  However, the record indicates

that plaintiff was provided with crutches, bandage wrapping, and instructed to keep his foot

1   elevated.  Therefore, plaintiff was not denied treatment.  He merely disagrees that the treatment    `

2   provided was appropriate.  This is insufficient to sustain an Eighth Amendment claim.  *See*

3   *Colwell*, 763 F.3d at 1068.

4       Last, plaintiff confusingly asserts that he was not properly evaluated for compartment

5   syndrome, a dangerous circulatory condition that can result from bleeding or swelling after an

6   injury.  But the medical evidence in the record does not suggest that plaintiff ever had

7   compartment syndrome.  To the contrary, the record indicates that plaintiff's circulation in the

8   right foot was evaluated at the ASP Triage Treatment Center on October 31 and November 2.

9   *See* ECF No. 30 at 47-48.  Even if it were true that medical professionals failed to test for

10   compartment syndrome, plaintiff would only be able to demonstrate a triable issue that Kaleka

11   was negligent in evaluating his symptoms.  Negligence is not deliberate indifference.  *See*

12   *Toguchi*, 391 F.3d at 1057.

13   **III. Findings and recommendations**

14       For the foregoing reasons, the court should grant defendant Kaleka's motion for summary

15   judgment.  ECF No. 25.

16       These findings and recommendations are submitted to the U.S. district judge presiding

17   over the case under 28 U.S.C. § 636(b)(1)(B) and Local Rule 304.  Within 14 days of the

18   service of the findings and recommendations, the parties may file written objections to the

19   findings and recommendations with the court and serve a copy on all parties.  That document

20   must be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The

21   presiding district judge will then review the findings and recommendations under 28 U.S.C.

22   § 636(b)(1)(C).  The parties' failure to file objections within the specified time may waive their

23   rights on appeal.  *See Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

24

25 IT IS SO ORDERED.

26

Dated:    January 16, 2019

27                            UNITED STATES MAGISTRATE JUDGE

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28